UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:22-cv-07450-MWF-MAR                                   Date:  February 27, 2024

Title:  _Alexander Torres v. Los Angeles Sheriffs Department et al_

Present: The Honorable:   MARGO A. ROCCONI, UNITED STATES MAGISTRATE JUDGE

| Valerie Velasco | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  (In Chambers) ORDER RE: MOTION TO COMPEL, DKT. 96**

## I.
## BACKGROUND:

On October 13, 2022, Plaintiff Alexander Torres ("Plaintiff") filed the instant 42 U.S.C. § 1983 ("section 1983") action against Los Angeles County Sheriff's Department ("LASD"), County of Los Angeles ("County"), and Defendant officers (collectively, "Defendants").  ECF Docket No. ("Dkt.") 1 ("Compl.").  Plaintiff seeks redress for injuries suffered by Plaintiff as a result of his wrongful conviction for murder.  Id.  Notably, Plaintiff alleges that the Defendant officers manufactured evidence and suppressed exculpatory evidence acting pursuant to the County and LASD's unconstitutional policies and practices, "including their failures to discipline and supervise officer misconduct, their allowance of evidence suppression and fabrication, their encouragement of officers to secure convictions at the expense of residents' constitutional rights, and their tolerance of self-organized gangs of deputies engaged in illegal acts."  Compl. ¶ 5.

On February 14, 2024, Plaintiff filed the instant Motion to Compel, which is before the Court on the parties' Joint Stipulation ("JS").  Dkt. 96.  The parties are at an impasse regarding whether Defendants must produce further documents related the 2001 investigation of the murder underlying Plaintiff's conviction and documents related to the 2021 reinvestigation, which was undertaken after Plaintiff's conviction was overturned and which Defendants allege is still ongoing.  JS at 6–19.  Plaintiff also requests sanctions for Defendants alleged withholding of relevant documents.  Id. at 19–27.

The Court finds these matters suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); Local Rule 7-15.  Accordingly, the March 6, 2024 hearing is **VACATED** and the request to appear remotely, Dkt. 97, is **DENIED** as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:22-cv-07450-MWF-MAR                                      Date:  February 27, 2024

Title:  *Alexander Torres v. Los Angeles Sheriffs Department et al*

moot.  For the reasons discussed below, the motion to compel **GRANTED**, and the motion for sanctions is **GRANTED in part, and DENIED in part.**

## II.
## GENERAL STANDARD

Generally, under the Federal Rules of Civil Procedure,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  However, a court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"A party seeking discovery may move for an order compelling an answer, ... production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "In moving to compel the production of documents, the moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery."  Grossman v. Dirs. Guild of Am., Inc., No. EDCV 16-1840-GW (SPx), 2018 WL 5914242, at *4 (C.D. Cal. Aug. 22, 2018) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).  In other words,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:22-cv-07450-MWF-MAR                                   Date:  February 27, 2024

Title:     *Alexander Torres v. Los Angeles Sheriffs Department et al*

the moving party bears the burden of demonstrating the sought discovery is relevant. Cabrales v. Aerotek, Inc., No. EDCV 17-1531-JGB-KKX, 2018 WL 2121829, at *3 (C.D. Cal. May 8, 2018).

In addition, "[r]elevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case." Centeno v. City of Fresno, No. 1:16-CV-653 DAD (SAB), 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016) (citing In re Bard IVC Filters Prod. Liab. Litig., 317 F.R.D. 562, 564 (D. Ariz. 2016)). However, ultimately, "[i]t has long been settled in this circuit that the party resisting discovery bears the burden of showing why discovery should not be allowed." United States ex rel. Poehling v. UnitedHealth Grp., Inc., No. CV 16-8697 MWF (SSX), 2018 WL 8459926, at *9 (C.D. Cal. Dec. 14, 2018) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.")).

## III.
## DISCUSSION

### A.    DOCUMENTS RELATED TO 2021 REINVESTIGATION

#### 1.    Additional background

This dispute centers around Defendants' responses to Request for Production ("RFP") Nos. 2, 3, 4, 8,10, and 16, which essentially seek all documents related to the "Guitron Homicide Investigation," which Plaintiff defined in their RFP as:

> any actions taken by any Investigator in order to determine the cause or circumstances of and/or the person or persons responsible for the incident that resulted in the killing of Martin Guitron. **This includes but is not limited to the police investigative materials maintained by the County Defendants.** This term is not limited solely to those actions leading to the prosecution of Plaintiff, but includes actions taken with regard to any other possible witnesses or suspects. **In addition, this term is not limited solely to actions taken prior to the arrest of Plaintiff**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR                                    Date:  February 27, 2024

Title:    *Alexander Torres v. Los Angeles Sheriffs Department et al*

> **but includes as well actions undertaken both before and after the arrest of Plaintiff, including any actions during any of Plaintiff's criminal trial or appeal and any actions undertaken at any time after Plaintiff's exoneration, up to and including the present day, including any reinvestigations**.

JS at 6–7 (emphasis added).  Defendants responded with largely boilerplate objections that the requests were overbroad, cumulative, vague, ambiguous, invasive of attorney-client privilege, and violative of privacy rights.  JS, Ex. 2, RFP Responses, Dkt. 96-2 at 5–10, 12.  "Without waiving these objections," Defendants pointed to Exhibits A through D in the County's production and noted that discovery was ongoing and continuing.  Id.

     Plaintiff's RFPs were originally served over a year ago, on December 23, 2022.  JS, Ex. 12, RFPs, Dkt. 96-12.  Defendants responded initially on February 27, 2022.  JS, Ex. 2, RFP Responses, Dkt. 96-2 at 32.  Yet, Defendants appear to admit that the investigation file from the original investigation ("2001 investigation file") was not produced to Plaintiff until six months later in June 2023, after Plaintiff insisted on an inspection of the files that led to his conviction; it was only then, at the inspection, that Plaintiff discovered the existence of the 2001 investigation file.  JS at 16; JS, Ex. 18, Declaration of Marina Samson ("Samson Decl."), Dkt. 96-18, ¶ 6.  After the inspection, Plaintiff wrote a letter asking Defendants to identify and confirm that they had produced all other documents from the investigation.  JS, Ex. 3, June 3, 2023 Letter, Dkt. 96-3 at 6–7 ("Plaintiff asks that Defendants identify whether there are any other materials relating to the investigation into Martin Guitron's murder that have not yet been produced.").

     Both before and after this inspection, Plaintiff had maintained that he was also entitled to the production of any documents related to the reinvestigation of the Guitron murder after Plaintiff's conviction was overturned.  See, e.g., JS, Ex. 4, May 25, 2023 Letter, Dkt. 96-4 at 5 (asserting that "[a]ny documents from [the Guitron Murder] Reinvestigation are relevant to Plaintiff's claims and discovery requests and should be produced," and noting that Defendants had not asserted privilege over any such documents).  After the inspection, Defendants maintained that the documents from the reinvestigation were privileged; however, Defendants agreed to first make an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR                               Date:  February 27, 2024

Title:   *Alexander Torres v. Los Angeles Sheriffs Department et al*

inquiry and identify the documents.  JS, Ex. 5, June 6, 2023 Letter, Dkt. 96-5 at 6.  Plaintiff reiterated that Defendants should identify all allegedly privileged documents and provide a privilege log.  JS, Ex. 6, June 29, 2023 Letter, Dkt. 96-6 at 3.

     In November 2023, despite previously agreeing to make an inquiry into the documents related to the reinvestigation of the Guitron murder, Defendants insisted that they would provide no information regarding the "open investigation," though Detective Landreth would answer questions about his reinvestigation at his deposition.  JS, Ex. 7, November 14, 2023 email, Dkt. 96-7.  Plaintiff again asked that Defendants produce all responsive documents and a privilege log for any that were withheld.  JS, Ex. 8, December 1, 2023 Letter, Dkt. 96-7 at 3–4.  In response, Defendants again agreed to produce records regarding the reinvestigation and did not indicate any intent to stand on privilege or provide a privilege log.  JS, Ex. 9, December 11, 2023 Letter, Dkt. 96-9 at 1 ("Defendants will produce records from the Reinvestigation by December 15, 2023.").  Defendants apparently did not identify or produce any documents.

     On January 23, 2024, Plaintiff deposed Detective Matthew Landreth, who conducted the reinvestigation into Guitron's murder; at the deposition, Landreth revealed that he possessed many documents that had never been identified or produced to Plaintiff, including documents related to the original 2001 investigation, an investigative file that Landreth had maintained since he began his reinvestigation ("2021 reinvestigation file"), and a "draft" report that he started in July 2021.  JS, Ex. 10, Landreth Dep., Dkt. 96-10 at 85:1–96:4.  Counsel for Defendants promised to produce everything except the draft report within twenty-four hours.  Id. at 115:2–6.  Though the production came over several weeks, Defendants eventually produced everything except the draft report, which is the only item Plaintiff is still seeking in the instant Motion (unless, as Plaintiff suggests, that there are more unidentified documents responsive to the RFP Nos. at issue).  JS at 13, 17.

     **2.**    **Additional relevant law**

     The law enforcement investigatory privilege is based on the idea that public disclosure of certain investigatory files could harm law enforcement efforts.  See *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 WL 2874623, at *4 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR  Date:  February 27, 2024

Title:  _Alexander Torres v. Los Angeles Sheriffs Department et al_

Cal. July 5, 2017) (citing United States v. Winner, 641 F.2d 825, 831 (10th Cir. 1981)). The "Ninth Circuit has not expressly recognized the law enforcement [investigative] privilege," though "several courts within this circuit have acknowledged and applied it" in unreported opinions.  Lien v. City of San Diego, No. 21-cv-224-MMA (WVG), 2022 WL 134896, at *2 (S.D. Cal. Jan. 14, 2022) (citations omitted).

To the extent the privilege does exist, the party claiming the privilege has the burden to establish its existence.  Conan, 2017 WL 2874623, at *4 (citing Friedman v. Bache Hasley Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984)).  In order to assert the law enforcement investigatory privilege, the party asserting the privilege must make a substantial threshold showing by meeting the following elements: "(1) asserting a formal claim of privilege by the head of the department with control over the requested information; (2) the assertion of the privilege must be based on personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation as to why it falls within the scope of the privilege."  Bradley v. Cnty. of San Joaquin, No. 2:17-cv-02313 KJM AC, 2018 WL 4502481, at *5 (E.D. Cal. Sept. 20, 2018) (citations omitted); see also U.S. ex rel Burroughs v. DeNardi Corp., 167 F.R.D. 680, 687 (S.D. Cal. 1996).

Furthermore, when a party asserts privilege, Fed. R. of Civ. P. 26(b)(5) ("Rule 26(b)(5)") requires that the party "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim[;]" parties often comply with this rule by providing a privilege log.  Failure to provide a timely privilege log may result in deeming the privilege waived.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005) (holding "[n]either the rules nor a binding judicial authority" contradicted the proposition "that the effect of untimeliness in properly asserting the privilege is to waive or otherwise abandon the privilege").

However, the Ninth Circuit has rejected a bright line rule for when a privilege has been waived for untimeliness.  Id. at 1149.  A district court in the Eastern District summarized the Ninth Circuit's holding in Burlington as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR                                         Date:  February 27, 2024

Title:  <u>Alexander Torres v. Los Angeles Sheriffs Department et al</u>

The court reviewed Federal Rule of Civil Procedure 26(b)(5), which requires a responding party to expressly make a claim of privilege and describe the documents covered by the privilege, in conjunction with Federal Rule of Civil Procedure 34, which requires that written responses to discovery requests be served within thirty days of service of the request. The court rejected a bright line test for waiver of the privilege, opting instead for a "holistic reasonableness test." The court held "boilerplate objections or blanket refusals" are insufficient to assert a privilege, but also characterized the thirty-day period as a default guideline, not a per se time bar, to consider case by case, taking into account the following factors:

> [1] the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient);
>
> [2] the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient);
>
> [3] the magnitude of the document production; and
>
> [4] other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

<u>Wormuth v. Lammersville Union Sch. Dist.</u>, No. 2:15-CV-01572-KJM-EFB, 2017 WL 2505195, at *2–3 (E.D. Cal. June 9, 2017) (citations omitted).  Notably, the <u>Burlington</u> court noted that a significant delay in providing a privilege log could alone warrant a finding of waiver, even under the holistic standard.  See <u>Burlington</u>, 408 F.3d at 1149 (finding that "in the absence of mitigating considerations," the fact that privilege log was five months after discovery requested would alone warrant a finding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:22-cv-07450-MWF-MAR | Date: February 27, 2024 |
| Title: *Alexander Torres v. Los Angeles Sheriffs Department et al* | |

that party had waived privilege objections, even under holistic standard considering multiple factors).

### 3. Analysis

#### a. The assertion of the law enforcement investigatory privilege appears untimely

Here, Defendants appear to invoke the law enforcement investigatory privilege with respect to Detective Landreth's "draft" report from July 2021. There is an argument that Defendants have waived their right to assert this privilege, given that it has nearly been two years since Plaintiff first propounded the relevant RFPs and Defendants have yet to produce a privilege log or something equivalent to satisfy their obligations under Rule 26(b)(5). Indeed, despite Plaintiff's several documented requests for a privilege log, Defendants wholly failed to even identify the report as an allegedly privileged document—its existence was only revealed to Plaintiff at Detective Landreth's deposition in January 2024.

To be sure, the Court notes that Defendants' communications could be construed to have consistently asserted the law enforcement investigatory privilege generally with respect to all documents related to the reinvestigation of the Guitron murder. As Defendants note, Plaintiff's counsel's June 6, 2023 Letter indicates that Plaintiff's counsel understood that Defendants were asserting a privilege with respect to the materials from the open reinvestigation of the murder. JS, Ex. 5, June 6, 2023 Letter, Dkt. 96-5 at 6. However, Plaintiff's counsel did not concede the materials would be privileged, and noted that any compromise regarding the reinvestigation materials would begin with the initial step of "identifying what documents are held by the LASD relating to Martin Guitron's murder and following [Plaintiff's] conviction." Id. Six days later, Plaintiff's counsel reiterated that "any privilege asserted with respect to the reinvestigation materials must be set forth in a privilege log." JS, Ex. 6, June 29, 2023 Letter, Dkt. 96-6 at 3. Still, Defendants point to no evidence that they made any effort in comply with their obligations under Rule 26(b)(5) to identify and describe these allegedly privileged documents. Importantly, as noted above, the contents of the allegedly privileged 2021 reinvestigation file were not revealed to Plaintiff until Landreth referenced them during his deposition in January 2024.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR  Date: February 27, 2024

Title:  <u>Alexander Torres v. Los Angeles Sheriffs Department et al</u>

Ultimately, whether as to the draft report or to the 2021 reinvestigation materials generally, the Court is inclined to find that Defendants' total failure to specifically identify the documents and explain the basis for their privilege for nearly two years justifies a finding of waiver, even under the holistic standard set forth in <u>Burlington</u>.  However, the Court need not deny Defendants' assertion of privilege on this basis, because they have failed to make the requisite threshold showing to show they would be entitled to the privilege.

### b. Defendants have failed to make the threshold showing of entitlement to the investigatory privilege

Even assuming Defendants' present assertion of the law enforcement investigatory privilege could be deemed timely and valid, and that such a privilege exists in the Ninth Circuit, Defendants have failed to make the threshold showing required to assert the privilege.  Defendants have not submitted a declaration from the department head in control of the documents making a formal claim of privilege.  Defendants submit only the declarations of Detective Landreth and Deputy Sheriff Luz Beas, a "Civil Litigation Investigator at the Risk Management Bureau"—neither of whom purport to be in formal control of the documents at issue  <u>See generally</u>, JS, Ex. 16, Declaration of Deputy Sheriff Luz Beas ("Beas Decl."), Dkt. 96-16; JS, Ex. 17, Declaration of Detective Matthew Landreth ("Landreth Decl."), Dkt. 96-17.

Furthermore, even assuming either Beas or Landreth could be construed to be a "department head with control over the requested information," neither Beas's nor Landreth's declaration reflect "personal consideration" of the privilege; indeed, neither declaration provides any justification for the privilege at all.  In fact, both declarations appear to admit that the only reason the 2021 reinvestigation file and related materials were not produced originally is because they were advised by counsel that the materials were not subject to disclosure.  <u>See</u> JS, Ex. 16, Beas Decl., Dkt. 96-16, ¶ 7 ("On May 17, 2023, I was advised by defense counsel that…pursuant to Plaintiff's counsel's agreement…the 2021 Open Investigation of the Guitron Murder was not subject to disclosure."); JS, Ex. 17, Landreth Decl., Dkt. 96-17, ¶ 5 ("On May 3, 2023…I was advised that the documents, records, and files related to the <u>2021 Guitron murder open and ongoing investigation</u> were not subject to disclosure.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:22-cv-07450-MWF-MAR                                                       Date:  February 27, 2024

Title:   *Alexander Torres v. Los Angeles Sheriffs Department et al*

To the extent Defendants' counsel contends that Plaintiff's counsel agreed that the 2021 reinvestigation file was not subject to disclosure, this is not reflected in the communications provided to the Court.  As discussed above, the meet and confer letters reflect that any compromise regarding the reinvestigation materials would begin with Defendants' identification of the documents and production of a privilege log, which Defendants failed to do.  In any case, even now, neither Beas nor Landreth's declaration appear to actually assert or provide a basis for the law enforcement investigatory privilege; in fact, both declarations suggest that Beas and Landreth have never asserted the privilege and have only withheld the reinvestigation materials at the behest of counsel.   Accordingly, these declarations are insufficient to meet Defendants' burden to make the requisite threshold showing of entitlement to the law enforcement investigatory privilege.

### c. Conclusion

Ultimately, Defendant's assertion of the law enforcement investigatory privilege with respect to the reinvestigation materials fails, either because it is untimely or because Defendants have failed to meet the requisite threshold burden to demonstrate an entitlement to the privilege.  Therefore, Defendants must produce the draft report.  Defendants should also specifically identify any remaining documents related to the investigation and reinvestigation that have yet to be produced.[1]

If Defendants maintain that no further responsive documents exist, Defendants' counsel and/or the relevant custodians of records shall submit sworn declarations stating as much; the declarations should also explain their search in detail,

---

[1] Though Defendants offhandedly assert that documents related to the reinvestigation are irrelevant or disproportionate to Plaintiff's claims, they do not provide any substantive argument on this point.  Furthermore, as noted above, Defendants represent that they already produced everything in the 2021 reinvestigation file other than the allegedly privileged draft report, and thus do not appear to be standing on their relevance or proportionality objections at this time.  In any case, the Court finds that, considering the broad definition of relevancy contemplated by Rule 26, Plaintiff has sufficiently shown that the reinvestigation materials could be relevant to defending against Defendants' attempts to cast aspersions on Plaintiff's innocence as part of a potential defense to Plaintiff's claims. To the extent Defendants contest the relevancy of these materials or otherwise argue the requested discovery is unduly burdensome or disproportionate, Defendants have not met their burden to show the discovery should be disallowed.  See United States ex rel. Poehling, 2018 WL 8459926, at *9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-07450-MWF-MAR                                                   Date:  February 27, 2024

Title:  <u>Alexander Torres v. Los Angeles Sheriffs Department et al</u>

including, but not limited to, all sources searched and all search parameters used.  See <u>In re Facebook Privacy Litigation</u>, No. 5:10-cv-02389-RMW, 2015 WL 3640518, at *2 (N.D. Cal. June 11, 2015) (ordering party to submit a declaration explaining her search for responsive documents in detail).  Once Defendants have either produced the remaining documents or the declarations described above, the Court is unlikely to grant any relief in response to further motions to compel on these items.  If Defendants' sworn assertions that "no responsive documents exist" prove to be false, there are other remedies available; for example, Plaintiff may impeach the defending party at trial, or seek sanctions for any alleged spoliation.

If Defendants maintain that other documents are privileged, Defendants should also produce a privilege log concurrently with any production.  While the Court does not currently find that any asserted privileges would be deemed waived, the Court may so find if privilege disputes come before this Court again; in any case, the losing party on any subsequent discovery will be subject to sanctions in the form of reasonable costs and fees.

Finally, though the Court has found that Defendants have either waived the privilege or failed to make the requisite substantial threshold showing and thus need not rule on the substantive issue of whether the privilege should apply, the Court notes two critical facts that mitigate any potential harm caused by the production of the reinvestigation materials.  First, and importantly, there is a protective order already in place in this case.  Dkt. 63.  The chief concern of the law enforcement investigation privilege is that public disclosure of certain investigatory files could harm law enforcement efforts.  <u>See Conan</u>, 2017 WL 2874623, at *4.  Concerns due to potential public disclosure are significantly mitigated when there is a protective order in place, and Defendants have not explained why the protective order in this case is insufficient to protect against the fear of public disclosure.  <u>See id.</u> at *5 (noting that "Defendants outline the potential harm of disclosure to the public, but do not explain how disclosure subject to a protective order would create a substantial risk of harm to these governmental interests…"); <u>see also</u> <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 662 (N.D. Cal. 1987) ("[I]t is important to emphasize that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer."); Dkt. 63 (stipulated protective order).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:22-cv-07450-MWF-MAR                                                 Date:  February 27, 2024

Title:   *Alexander Torres v. Los Angeles Sheriffs Department et al*

      Second, the Court notes that it is unclear whether the reinvestigation of the Guitron murder qualifies as an "ongoing" investigation such that it might be functionally imperiled by the production of documents in this case.  "The purpose of the law enforcement investigative privilege is to 'minimize disclosure of documents whose revelation might [actually] impair the necessary functioning ... of law enforcement,' 12 Fed. Proc., L. Ed. § 33:305, not to shield local police departments from any discovery request they might find inconvenient or uncomfortable." Hereford v. City of Hemet, No. 5:22-CV-00394-JWH (SHK), 2023 WL 6813740, at *17 (C.D. Cal. Sept. 14, 2023).  Accordingly, when law enforcement does not provide an anticipated end date to pending investigations, courts are reluctant to allow the "indefinite assertion of the ongoing investigation privilege" because it can "unreasonably delay[ ] the progress of th[e] [civil] case and frustrat[e] the interests of justice."  Hereford, 2023 WL 6813740, at *17 (citing Bradley, 2-18 WL 4502481, at *6).  Here, as Plaintiff notes, Landreth wrote the draft report in 2021 and has testified that he has taken no steps in his investigation since December 2021.  JS, Ex. 10, Landreth Dep., Dkt. 96-10, at 118:22–119:12.  Given that the investigation has been stale for over two years and Defendants have not indicated an anticipated end date to the "ongoing" investigation, it is unclear how disclosure of the reinvestigation files will functionally impede law enforcement functioning.  Defendants cannot simply expect to enjoy the indefinite protection of the law enforcement investigatory privilege.

      Nonetheless, to the extent the draft report or any other documents related to the reinvestigation contain specific sensitive identifying information (such as the identity of undercover agents, addresses, etc.), Defendants may appropriately apply careful redactions.  The Court notes that redaction should be limited to sensitive information and should not be used to omit information Defendants simply deem irrelevant.  See United States v. McGraw-Hill Companies, Inc., No. CV 13-0779-DOC JCGX, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands.").
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-07450-MWF-MAR        Date: February 27, 2024

Title: *Alexander Torres v. Los Angeles Sheriffs Department et al*

**B.**     **SANCTIONS**

     **1.**     **Applicable law**

Rule 37(c)(1) provides that:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    (A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
    (B)    may inform the jury of the party's failure; and
    (C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

Furthermore, Rule 37(a)(5)(A) provides that, if a motion to compel is granted:

the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

    (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii)    other circumstances make an award of expenses unjust.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  2:22-cv-07450-MWF-MAR                                          Date:  February 27, 2024

Title:    *Alexander Torres v. Los Angeles Sheriffs Department et al*

Fed. R. Civ. P. 37(a)(5)(A).

**2.    Analysis**

Here, Plaintiff argues that Defendants have, on at least two occasions, intentionally withheld responsive documents, and asks this Court to order the following sanctions:

(1)  An adverse jury instruction that the 2001 investigative filed was willfully withheld from Plaintiff until June 2023 and that the 2021 reinvestigation was willfully withheld from Plaintiff until February 3, 2024 or whatever date it is fully produced; and
(2)  The County and LASD will pay all Plaintiff's attorney's fees and costs for this motion, for the parties' discovery correspondence and conferences addressing these issues, and for the time spent preparing for and conducting Landreth's January 23, 2024 deposition and any subsequent deposition.

JS, Dkt. 96 at 23.

As an initial matter, this Court does not have the authority to order the district judge to adopt adverse jury instructions and may only recommend such evidentiary sanctions.  *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 493 (C.D. Cal. 2022) (noting that "[a] Magistrate Judge may recommend [evidentiary] sanctions by report and recommendation to the District Judge presiding over the case.").  In any case, the Court does not find that a recommendation of adverse jury instructions is currently warranted here, primarily because Plaintiff has not demonstrated prejudice from Defendants' failure to disclose.  After this order, Plaintiffs should have all the files related to the investigation and reinvestigation of the Guitron murder well in advance of trial and dispositive motion practice.  Thus, it appears that Defendants' failure to timely produce the files will likely be harmless.

Furthermore, though it is not necessarily required for Plaintiff to demonstrate bad faith to obtain his requested sanctions, it is not clear that the files were "willfully"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-07450-MWF-MAR Date: February 27, 2024

Title: *Alexander Torres v. Los Angeles Sheriffs Department et al*

withheld in the sense that Plaintiff's proposed jury instruction appears to contemplate. Defendants argue that they only withheld documents based on good-faith objections, and that any failure to timely disclose or supplement the investigation files was due to a combination of inadvertent delays due to search efforts, ongoing good-faith discovery discussions, and technical difficulties in transmitting the files. JS, Ex. 18, Samson Decl., Dkt. 96-18, ¶ 14. While Defendants' assertion of privilege may have ultimately been fruitless, and while Defendants may have demonstrated some degree of negligence or poor communication in collecting, identifying, and producing discovery, the Court cannot find that they willfully withheld documents in bad faith. Indeed, the numerous letters and emails submitted as exhibits to the JS demonstrate that the parties have been continuously engaging in good faith meet and conferring on this issue for several months.

 Ultimately, considering that any failure to disclose the investigation files appears harmless at this juncture, the Court declines to recommend that the district court adopt evidentiary sanctions. Furthermore, considering that the Defendants do not appear to have acted in bad faith, the Court declines to order the full gamut of monetary sanctions that Plaintiff requests.

 The Court will, however, require that Defendants pay the reasonable costs and fees incurred in bringing this motion pursuant to Rule 37. The exhibits to the JS show that Plaintiff engaged in multiple good faith attempts to obtain the requested discovery without court intervention. Furthermore, while Defendants' initial assertion of privilege may have been substantially justified, the Court cannot find that their current position is substantially justified given their gross delay in identifying the allegedly privileged documents and providing a privilege log. Finally, the Court does not find that any other reason makes an award of costs and fees unjust. Accordingly, Defendants and their counsel, jointly and severally, will be liable for the reasonable costs and fees incurred in bringing this motion.
///
///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  2:22-cv-07450-MWF-MAR                                   Date:  February 27, 2024

Title:      *Alexander Torres v. Los Angeles Sheriffs Department et al*

# III.
# ORDER

**IT IS THEREFORE ORDERED** that:

1) Plaintiff's motion to compel is **GRANTED**;
2) Within **seven days of this order**, Defendants must produce the draft report and any remaining documents related to the investigation and reinvestigation of the Guitron murder.  If Defendants maintain that no further responsive documents exist, Defendants' counsel and/or the relevant custodians of records shall submit sworn declarations as described above.  Any allegedly privileged documents should be identified in a privilege log provided concurrently with the production or declarations.  Defendants may carefully redact any sensitive identifying information;
3) Plaintiff's motion for evidentiary sanctions is **DENIED**;
4) Plaintiff's motion for monetary sanctions is **GRANTED in part and DENIED in part.**  Defendants and their counsel shall pay, jointly and severally, Plaintiff's reasonable costs and fees in bringing this motion.  Plaintiff shall submit his declaration regarding expenses **within seven days of this order**.  Defendant may file objections to Plaintiff's declaration **within seven (7) days of the filing of Plaintiff's declaration**;
5) The request to appear remotely, Dkt. 97, is **DENIED** as moot.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | vv |